UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
ANTHONY E. RUSSO,                       :
                     Plaintiff,         :
                                        :       10 Civ. 914 (DLC)
          -v-                           :
                                        :       OPINION & ORDER
210 RIVERSIDE TENANTS, INC., HALSTEAD   :
MANAGEMENT COMPANY LLC, MICHAEL         :
TAMBASCO, ELJIO BERISHA, LOCAL 32BJ     :
SERVICE EMPLOYEES INTERNATIONAL LABOR   :
UNION, and REALTY ADVISORY BOARD ON     :
LABOR RELATIONS INC.,                   :
                                        :
                     Defendants.        :
                                        :
----------------------------------------X

APPEARANCES:

For Plaintiff:
Eric Andrew Suffin
160 West 71st Street, Suite 2B
New York, NY 10023

For Defendant Realty Advisory Board on Labor Relations Inc.:
Harry Weinberg
292 Madison Avenue, 16th Floor
New York, NY 10017


DENISE COTE, District Judge:

     Plaintiff Anthony Russo ("plaintiff") has filed suit

against 210 Riverside Tenants, Inc. ("210"), Halstead Management

Company LLC ("Halstead"), Local 32BJ Service Employees

International Labor Union (the "Union")[1], Realty Advisory Board

on Labor Relations Inc. (the "RAB"), Michael Tambasco

---

[1] The RAB represents that the correct name of the Union is "Local
32BJ Service Employees International Union."

("Tambasco"), and Eljio Berisha ("Berisha") (collectively, the "defendants") following the termination of his employment.  On May 19, 2010, the RAB moved to dismiss each of the plaintiff's claims against the RAB.  For the following reasons, the RAB's motion is granted.

<u>BACKGROUND</u>

The following facts, taken from the plaintiff's April 9, 2010 second amended complaint (the "Complaint") and documents integral to the Complaint are assumed to be true in deciding this motion.[2]  Only those facts relevant to the instant motion are set forth below.

Plaintiff is a member of the Union.  In or about July 2009, plaintiff was hired as a doorman at 210 Riverside Drive (the "Building").  The Building is owned by 210 and managed by Halstead, and its doormen's employment is governed by the

---

[2]  "In determining the adequacy of the complaint, the court may consider any written instrument attached to the complaint as an exhibit or incorporated in the complaint by reference, as well as documents upon which the complaint relies and which are integral to the complaint."  <u>Subaru Distribs. Corp. v. Subaru of Am., Inc.</u>, 425 F.3d 119, 122 (2d Cir. 2005) ("<u>Subaru</u>"); <u>see also Chapman v. N.Y. State Div. for Youth</u>, 546 F.3d 230, 234 (2d Cir. 2008).  The court is "not obliged to accept the allegations of the complaint as to how to construe such documents, but at this procedural stage, [the court] should resolve any contractual ambiguities in favor of the plaintiff."  <u>Subaru</u>, 425 F.3d at 122.  The Complaint incorporates by reference the CBA and February 1 Letter.

collective bargaining agreement ("CBA") concluded between the Union and the RAB.[3]

While employed at the Building, plaintiff worked two nights per week from 11:30 pm until 7:30 am and Sundays from 3:30 pm until 11:30 pm.  Plaintiff repeatedly requested that he be allowed a meal period during his Sunday shifts, but Berisha, the building superintendent, told plaintiff that there were no breaks on Sundays.  Plaintiff, who regularly takes "life-sustaining medication,"[4] explained to Berisha that he would need to leave the Building promptly after each shift to return home and take his medication.  The doorman who relieved the plaintiff was usually fifteen to thirty minutes late on days when plaintiff worked the overnight shift.  This pattern of lateness caused the plaintiff to "miss his daily regimen of medication on several occasions."

On the morning of January 7, 2010, plaintiff waited more than thirty minutes past the end of his shift for the next doorman to arrive.  Plaintiff then received a telephone call from his replacement, who told plaintiff that he was "down the block."  After receiving this call, and believing that the next

---

[3] The CBA explains that the RAB represents "various owners of apartment buildings and other employers who become signatory to this agreement," while the Union represents "its members and other building service employees."

[4] The plaintiff does not identify the nature of this medication in his Complaint.

doorman was nearby, plaintiff left the building to take his medication.

Sometime after January 7, Berisha requested that the plaintiff attend a meeting with the Building's property manager on the afternoon of January 13 (the "Meeting").  Although Frank Monaco ("Monaco"), a Union representative, told the plaintiff that he would attend the Meeting, no Union representative came to the Meeting.  At the Meeting, the plaintiff was suspended until further notice.  Plaintiff was notified on January 22 that his employment was being terminated.

On or about February 1, the Union sent the RAB a letter (the "February 1 Letter") reporting the plaintiff's claim that he had been "unjustly suspended" and instructing the RAB to "hold the matter in abeyance until further notification" because the claim was "being referred to Local 32BJ's Grievance Appeal Board."  The RAB has not taken any action with regard to the suspension or termination of plaintiff's employment.

PROCEDURAL HISTORY

Plaintiff filed this action pro se in New York Supreme Court, New York County, on January 19, 2010.  The Union removed the case to federal court on February 4.  Plaintiff, thereafter acting through counsel, filed an amended complaint on February 22, and a second amended complaint on April 9.  It pleads two

4

claims against the RAB: breach of the CBA and violation of New York Labor Law § 162.

On May 18, the RAB moved to dismiss both claims brought against it.  The motion was fully submitted on June 17.

DISCUSSION

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'"  Ashcroft v. Iqbal, 556 U.S. __, 129 S. Ct. 1937, 1949 (2009).  This rule "does not require 'detailed factual allegations,'" id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)), but "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  Id. (quoting Twombly, 550 U.S. at 555); see also id. ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

A trial court considering a Rule 12(b)(6) motion "accepts all well-pleaded allegations in the complaint as true, drawing all reasonable inferences in the plaintiff's favor."  Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC, 595 F.3d 86, 91 (2d Cir. 2010).  To survive dismissal, "a complaint must allege a plausible set of facts sufficient 'to raise a right to relief above the speculative level.'"  Id. (quoting Twombly, 550 U.S. at 555).  In other words, "a complaint must

contain sufficient factual matter, accepted as true, to 'state a
claim to relief that is plausible on its face.'" Iqbal, 129 S.
Ct. at 1949 (quoting Twombly, 550 U.S. at 570).  "A claim has
facial plausibility when the plaintiff pleads factual content
that allows the court to draw the reasonable inference that the
defendant is liable for the misconduct alleged." Id. at 1949.
Applying the plausibility standard is "a context-specific task
that requires the reviewing court to draw on its judicial
experience and common sense."  Id. at 1950.

I. Hybrid § 301/Duty of Fair Representation Claim

Plaintiff alleges that the RAB and other defendants
employed the plaintiff and breached the CBA, thereby violating
the Labor Management Relations Act, 29 U.S.C. § 185.  "It has
long been established that an individual employee may bring suit
against his employer for breach of a collective bargaining
agreement." DelCostello v. Int'l Bhd. of Teamsters, 462 U.S.
151, 163 (1983).  An employee ordinarily "is required to attempt
to exhaust any grievance or arbitration remedies provided in the
collective bargaining agreement" before filing suit, however,
and therefore may only sue his employer under Section 301 if the
employee's union has also "breach[ed] its duty of fair
representation" to the employee. DelCostello, 462 U.S. at 163-
64; see also Dougherty v. Am. Tel. & Tel. Co., 902 F.2d 201, 203
(2d Cir. 1990).  To prevail on such a "hybrid § 301/duty of fair

representation claim," the plaintiff "must demonstrate both (1) that [the employer] breached its collective bargaining agreement and (2) that [the Union] breached its duty of fair representation." Sanozky v. Int'l Ass'n of Machinists & Aerospace Workers, 415 F.3d 279, 282 (2d Cir. 2005); see also DelCostello, 462 U.S. at 164-65 (outlining the two claims and identifying them as "inextricably interdependent"). In other words, although the plaintiff need not name both the employer and the union as defendants, the plaintiff must prove fault by both in order to succeed against either. Carrion v. Enter. Ass'n, Metal Trades Branch Local Union 638, 227 F.3d 29, 33 (2d Cir. 2000); see also DelCostello, 462 U.S. at 165 ("The employee may . . . sue one defendant and not the other; but the case he must prove is the same whether he sues one, the other, or both.").

The plaintiff alleges that the RAB breached the CBA by failing to take any action on plaintiff's grievance regarding his suspension and termination of employment. In its motion to dismiss, the RAB argues that it was not plaintiff's employer, that it had no duty to plaintiff under the CBA, that it did not breach the CBA, and that the Union did not breach its duty of fair representation.

Plaintiff's claim against the RAB appears to depend on the section of the CBA governing the resolution of employee grievances.[5]  The CBA states, in pertinent part:

> 4. All Union claims are brought by the Union alone and no individual shall have the right to compromise or settle any claim without the written permission of the Union.
> 5. Any matter submitted to arbitration shall be simultaneously submitted to Joint Industry Grievance Committee.
> 6.  The Committee shall be composed of representatives of the Union and the RAB, who may be present at any meeting.  If the meeting is not held before the arbitration date, the meeting will be cancelled.
> It shall be the function of the Committee to seek and encourage the settlement of all disputes brought before it.

(Emphasis supplied.)

"[A] written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms." MHR Capital Partners LP v. Presstek, Inc., 884 N.Y.S.2d 211, 215 (N.Y. 2009).  The RAB's role under the CBA, as a member of the Joint Industry Grievance Committee (the "Committee"), is to "seek and encourage the settlement of all disputes brought before it" (emphasis added).  The plaintiff has not alleged, however, that his dispute was ever "submitted" to the Committee.  The February 1 Letter, which appears to be the only basis for plaintiff's allegation that a grievance had

---

[5] Plaintiff alleges that "Defendant [RAB] has taken no action with regard to plaintiff's suspension or termination though defendant [RAB]'s function, pursuant to the [CBA], is to seek and encourage the settlement of all disputes brought before it."

been brought to the RAB's attention, explicitly instructs the RAB to "hold this matter in abeyance."  A letter with this instruction cannot be fairly characterized as submitting a matter for Committee action.  Nor does the CBA reveal any duty on the part of the Committee to address grievances sua sponte, as plaintiff's claim appears to assume.  See Law Debenture Trust Co. of N.Y. v. Maverick Tube Corp., 595 F.3d 458, 467 (2d Cir. 2010) ("Language whose meaning is otherwise plain does not become ambiguous merely because the parties urge different interpretations in the litigation unless each is a reasonable interpretation." (citation omitted)).  Because the plaintiff has not plausibly alleged that the RAB has failed to fulfill its obligations under the CBA, plaintiff's claim against the RAB for breach of the CBA must be dismissed.[6]

## II.   New York Labor Law § 162

Plaintiff also alleges that the RAB violated New York Labor Law § 162 because he was denied a meal break on his Sunday evening shift.  That statute provides, in pertinent part, that

> Every person employed for a period or shift of more than six hours starting between the hours of one o'clock in the afternoon and six o'clock in the

---

[6] In the Complaint, plaintiff alleges not only breach of the CBA by the defendants, but also breach of "their contract with plaintiff."  This allegation is the Complaint's only reference to a contract concluded directly with the plaintiff.  Because no additional factual allegations have been made with respect to this supposed contract, plaintiff's claim against the RAB for breach of the "contract with plaintiff" must also be dismissed.

morning, shall be allowed at least . . . forty-five
minutes for a meal period . . . at a time midway
between the beginning and end of such employment.

New York Labor Law § 162(4). New York Labor Law § 21 vests the

Commissioner of Labor of the State of New York with the

authority to enforce § 162.

"[T]here is no implied private right of action for alleged

violations of Labor Law §[] 162." Carrube v. N.Y. City Transit

Auth., 738 N.Y.S.2d 67, 68 (2d Dep't 2002). Consequently,

plaintiff's claim against the RAB for violating § 162 must be

dismissed.

### CONCLUSION

The RAB's May 19, 2010 motion to dismiss is granted.

SO ORDERED:

Dated:    New York, New York
          July 13, 2010

                                    _____
                                    DENISE COTE
                                    United States District Judge