```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
ANTHONY E. RUSSO,                       :
                 Plaintiff,             :    10 Civ. 914
                                        :       (DLC)
           -v-                          :
                                        :    OPINION &
210 RIVERSIDE TENANTS, INC., HALSTEAD MANAGEMENT :   ORDER
COMPANY LLC, MICHAEL TAMBASCO, ELJIO BERISHA,    :
LOCAL 32BJ SERVICE EMPLOYEES INTERNATIONAL LABOR :
UNION, and REALTY ADVISORY BOARD ON LABOR        :
RELATIONS INC.,                         :
                                        :
                 Defendants.            :
                                        :
----------------------------------------X
```

APPEARANCES:

For Plaintiff:
Eric Andrew Suffin
160 West 71st Street, Suite 2B
New York, NY 10023

For Defendant Service Employees International Union, Local 32BJ
Katherine Dunn
101 Avenue of Americas, 19th Floor
New York, NY 10013

   Anthony Russo was employed as a doorman at a Manhattan apartment building. He was fired after he left his post without waiting for his replacement to arrive. His union refused to arbitrate his grievance with his employer, and instead of appealing the union's decision through its internal grievance process, Russo brought this action. Following the close of discovery, his employer and his union have moved for summary

judgment.  Their motions are granted on the ground that Russo failed to exhaust the union's internal grievance process.

<u>BACKGROUND</u>

The following facts are undisputed unless otherwise noted. Russo was employed as a doorman at 210 Riverside Drive ("210 Riverside") from July 30, 2009 until January 22, 2010.  210 Riverside is managed by Halstead Management Company, LLC ("Halstead").  Russo's schedule included two overnight shifts on Tuesday and Wednesday.  An overnight shift begins at 11:30 p.m. and ends at 7:30 a.m.  Russo was required to remain at his post until his replacement arrived.

On Tuesday, January 6, 2010, Russo worked the overnight shift, which was scheduled to end on January 7, at 7:30 a.m. Russo's replacement was William Santiago ("Santiago"), but Santiago did not arrive at 7:30.  Russo asserts that a little after 8:00 a.m. he got a call from Santiago, who said that he was "down the block."  Russo then "waited and waited and waited," but Santiago never came.  Russo finally locked the door and left without notifying the building superintendent Elijio Berisha ("Berisha").

Russo explains that he left his post before Santiago arrived because he was frustrated with Santiago's repeated lateness and wanted to return home to take pills he had been

prescribed for a medical condition.  Russo had never told anyone at 210 Riverside that he needed to leave his post promptly at the end of his shift to return home to take medication.  Russo could have but did not bring his pills with him to work.

Soon after this incident, Berisha advised Russo of a meeting at Halstead's offices on January 13.  Russo promptly contacted his union representative, who told him to attend the meeting and that the union's grievance representative Frank Monaco ("Monaco") would accompany him.  Russo was a member of the Service Employees International Union Local 32BJ ("Union").

On January 13, Berisha and Michael Tambasco ("Tambasco"), Halstead's property manager for 210 Riverside, met with Russo.  Monaco had called Halstead's offices to advise it that he would be ten minutes late, but Tambasco began the meeting without Monaco.  At the conclusion of a brief meeting, Tambasco suspended Russo pending a decision by the board for 210 Riverside on whether to fire Russo.  When Monaco arrived at Halstead's offices, Russo told him that he had just been suspended.  Monaco then spoke with Tambasco and learned that Tambasco was going to recommend to the building's board that it fire Russo.  Tambasco immediately advised Russo to file a grievance with the Union.

On January 14, Russo filed a grievance with the Union, asserting that his suspension was without just cause. On January 22, Tambasco notified Russo in writing that he had been fired because he had "abandoned [his] post without notice or authorization, . . . [had] acted inappropriately on several occasions, and continually fail[ed] to carry out [his] porter duties properly." Monaco decided not to pursue the grievance over the termination given Russo's admission that he had abandoned his post without calling the superintendent and Russo's short tenure at the building, among other reasons. The Union did submit a grievance, however, to obtain overtime pay for Russo, and Russo was paid for the time he remained on duty after the end of his shift.

On February 2, the Union advised Russo by letter that it had determined that his grievance lacked sufficient merit to be pursued in arbitration. It added, "[i]f you wish to appeal this decision not to arbitrate your complaint to the Union's Grievance Appeal Board, you must send the Union a written appeal explaining why you believe your complaint has merit within 21 days of the date of this letter." The letter explained that if Russo sent a "timely appeal, you will have an opportunity to explain to the Grievance Appeal Board . . . why you believe your

complaint should be arbitrated.  If you do not appeal, your complaint will be closed."

The Union's Constitution provides for a Grievance Appeal Board ("GAB") composed of Union members.  The GAB may sustain the Union's decision not to proceed to arbitration or direct the Union to proceed to arbitration.  Its recommendations are submitted to the Union's Joint Executive Board, which can adopt or reject the GAB's recommendations.

Russo did not appeal the Union's decision to the GAB.  The Union, which had advised 210 Riverside to hold the termination of Russo's employment in abeyance, ultimately advised Russo's employer that it was withdrawing the grievance and that the matter was closed.

Instead of filing an appeal with the GAB, Russo filed a lawsuit in New York State court on January 19 against 210 Riverside, Halstead, Tambasco, Berisha, and the Union.  The Union removed the case to federal court on February 4.  Russo filed an amended complaint on February 22, and on April 9 he filed a second amended complaint ("Complaint") which added the Realty Advisory Board on Labor Relations Inc. ("RAB") as a defendant.  On July 13, the claims against the RAB were dismissed.  Russo v. 210 Riverside Tenants, Inc., No. 10 Civ. 914(DLC), 2010 WL 2758192, at *1 (S.D.N.Y. July 13, 2010).  On

July 16, the Union filed a motion for summary judgment. That same day, the employer defendants -- 210 Riverside, Halstead, Tambasco, and Berisha -- also filed a motion for summary judgment.

## DISCUSSION

Summary judgment may not be granted unless all of the submissions taken together "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of demonstrating the absence of a material factual question, and in making this determination, the court must view all facts "in the light most favorable" to the nonmoving party. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); see also Holcomb v. Iona Coll., 521 F.3d 130, 132 (2d Cir. 2008).

When the moving party has asserted facts showing that the non-movant's claims cannot be sustained, the opposing party must "set out specific facts showing a genuine issue for trial," and cannot "rely merely on allegations or denials" contained in the pleadings. Fed. R. Civ. P. 56(e); see also Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009). "A party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," as "[m]ere conclusory

allegations or denials cannot by themselves create a genuine issue of material fact where none would otherwise exist." <u>Hicks v. Baines</u>, 593 F.3d 159, 166 (2d Cir. 2010) (citation omitted). Only disputes over material facts --"facts that might affect the outcome of the suit under the governing law" -- will properly preclude the entry of summary judgment. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); see also <u>Matsushita Elec. Indus. Co., Ltd. V. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986) (stating that the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts").

The Complaint pleads four causes of action. It asserts that 210 Riverside, Halstead, Tambasco and the Union breached the collective bargaining agreement ("CBA") between the Union and Russo's employer; that the Union breached its duty of fair representation; that 210 Riverside and Halstead denied Russo a meal period in violation of New York State Labor Law § 162; and that Berisha defamed the plaintiff. In opposing the motion, the plaintiff has abandoned his third and fourth causes of action.[1]

---

[1] In the fourth cause of action, Russo asserts that Berisha defamed him by alleging that Russo had used the term "fat bitch" to describe a tenant, and had called female tenants "hon". At his deposition Russo admitted describing a tenant as a fat bitch when speaking with a fellow employee, and admitted that he called a lot of female tenants "dear".

As explained in Russo's opposition to this motion, his first and second claims rest on his assertions that the Union breached its duty of fair representation by failing to attend his January 13 meeting with Berisha and Tambasco, and by refusing to arbitrate his grievance over his suspension and then his termination from employment.[2]  While Russo does not dispute that he left his post before his replacement arrived, and that this was a breach of his duties as a doorman, he does complain that 210 Riverside chose to employ the most severe sanction and discharge him.

Breaches of a CBA constitute violations of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185.  "It has long been established that an individual employee may bring suit against his employer for breach of a collective bargaining agreement."  DelCostello v. Int'l Bhd. Of Teamsters, 462 U.S.

---

[2] While Russo identified during his deposition several ways in which 210 Riverside allegedly violated the CBA, his opposition to this motion rests essentially on the Union's failure to arbitrate the termination of his employment.  Russo's other complaints about 210 Riverside concern its changes to his schedule; failure to pay a meal allowance; failure to allow him sixteen hours off between shifts; requirement that he work an excessive amount of overtime; inefficient management of the building; and delay in notifying him of the termination of his employment.  Russo had also complained to the Union at the time of his suspension that his employer was violating his right to a lunch break; the Union told him that it would address the matter in the event he were able to continue to work at 210 Riverside.

151, 163 (1983).  But since most CBAs "accord finality to grievance or arbitration procedures established by the [CBA], an employee cannot bring a § 301 action against an employer unless he can show that the union breached its duty of fair representation in its handling of his grievance."  Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry, 494 U.S. 558, 564 (1990).  To prevail on such a "hybrid § 301/duty of fair representation claim," the plaintiff "must demonstrate both (1) that [the employer] breached its collective bargaining agreement and (2) that [the Union] breached its duty of fair representation."  Sanozky v. Int'l Ass'n of Machinists & Aerospace Workers, 415 F.3d 279, 282 (2d Cir. 2005).  See also Terry, 494 U.S. at 564.  In other words, although the plaintiff need not name both the employer and the union as defendants, the plaintiff must prove fault by both in order to succeed against either.  Carrion v. Enter. Ass'n, Metal Trades Branch Local Union 638, 227 F.3d 29, 33 (2d Cir. 2000); see also Terry, 494 U.S. at 564 ("Whether the employee sues both the labor union and the employer or only one of those entities, he must prove the same two facts . . . .").

Under the LMRA, district courts are given "discretion" to decide whether a plaintiff is required to "exhaust internal union remedies" prior to filing suit.  Maddalone v. Local 17,

United Bhd. Of Carpenters, 152 F.3d 178, 186 (2d Cir. 1998).  In balancing the "right of union members to institute suit" with the "policy of judicial noninterference in union affairs," id. (citation omitted), at least three factors are relevant:

> First, whether union officials are so hostile to the employee that he could not hope to obtain a fair hearing on his claim; second, whether the internal procedures would be inadequate either to reactivate the employee's grievance or to award him the full relief he seeks; and third, whether exhaustion of internal procedures would unreasonably delay the employee's opportunity to obtain a judicial hearing on the merits of his claim.

Id. (quoting Clayton v. Int'l Union, United Auto., Aerospace & Agric. Workers of Am., 451 U.S. 579, 689 (1981)).

Russo failed to exhaust the Union's internal grievance process.  He was notified in writing of his right to appeal the Union's decision not to proceed to arbitration.  The letter advised Russo that he could complain in writing to GAB within 21 days.  GAB's decision would have been subject to review by the Union's Joint Executive Board.  Russo did not appeal.

The defendants are entitled to summary judgment due to Russo's failure to exhaust the Union's grievance process.  Russo does not contend that either GAB or the Joint Executive Board were hostile to or biased against him, or that they would have unreasonably delayed his claim.  The Union has shown that its procedures are adequate and reasonable, and that they were

clearly explained to Russo.  Having failed to show that the Union breached its duty of fair representation, Russo's claim against his employer and defendants associated with his employer must also be dismissed.  As noted above, when proceeding against his employer on a theory that the employer violated the CBA, a plaintiff must also prove that the union breached its duty of fair representation.

Russo contends that he was not required to exhaust the Union's internal grievance procedures for essentially three separate reasons.  First, Russo contends that the Union's Constitution does not require that any appeal to the GAB[3] be in writing or be submitted within 21 days.  Second, Russo asserts that the complaint in this action should be deemed an appeal to the GAB of the Union's refusal to proceed to arbitration.  Third, Russo asserts that pursuing the grievance process would have been futile because the Union would not have represented him in good faith.

The plaintiff has cited no authority for the proposition that a union's internal grievance procedures must be described in detail in its constitution.  To the contrary, to prove that its procedures are "reasonable," a union need only show that its members "have been informed of the availability of internal

---

[3] Russo mistakenly refers to the GAB as the JGAB.

appellate remedies" and that the procedures are not unduly "cumbersome or confusing." Johnson v. General Motors, 641 F.2d 1075, 1080 (2d Cir. 1981). There is no dispute that these requirements were met here. The Union's constitution provides a general description of the appeals process. It explains that:

> In accordance with the procedures adopted by the Grievance Board, and approved by the Joint Executive Board, any member dissatisfied with the disposition of his or her complaint or grievance in any department of the Local Union, or by any official thereof, may appear before the Grievance Board to request a reexamination and redisposition of the complaint.
>
> The Grievance Board shall hold a hearing at which all persons involved in the disposition of the matter will be given an opportunity to appear. It shall then report its recommendations and finding to the Joint Executive Board for its action upon the matter.

In its letter of February 2, the Union explained the appeals process to Russo. That process required any appeal to be filed with the GAB in writing within 21 days. This constituted adequate notice to Russo of the appeals process.

Next, Russo contends that he essentially filed an appeal with the GAB when his attorney told the Union's counsel after the initial conference with the Court on March 4 that the Union could "accept" his complaint in this lawsuit as the appeal.[4]

---

[4] Russo mistakenly identifies the date of the conference as February 25.


This statement was apparently made in response to the Union's protest at the initial conference that the lawsuit should be dismissed for the plaintiff's failure to exhaust the Union's internal appeals process and the Union's request for a schedule for the filing of this summary judgment motion. Russo's argument may be swiftly rejected. A complaint filed in court is not an appeal filed with the GAB.

Finally, Russo contends that he should be excused from appealing the Union's decision not to pursue arbitration because, even if the GAB and the Joint Executive Board had supported his right to arbitrate, the Union would not have represented his grievance with the diligence and loyalty he deserved. Russo points to a telephone conversation he had with the Union's attorneys on February 5, three days after he had been advised that the Union would not pursue arbitration and that he had a right to appeal that decision to the GAB. In that February 5 telephone call, the Union's attorneys told him that the Union would not pursue arbitration because he had sued the Union.[5]

The February 5 conversation did not excuse Russo from his obligation to exhaust the Union's appeal process. Russo does

---

[5] The Union contends that it indicated that it would not reverse its initial determination regarding arbitration merely because it is sued.

not show or contend that the members of either the GAB or the Joint Executive Board were or would have been biased against him. In the event that the Joint Executive Board directed the Union to pursue arbitration of Russo's grievance, there is no basis to find on this record that the Union employees who would have represented Russo and the Union in that arbitration would have been disloyal either to him or the Union. The fact that attorneys for the Union expressed frustration or even anger at Russo over his lawsuit and refused to change their recommendation that the Union not arbitrate his claim is insufficiently tethered to the duty to represent him fairly during an arbitration to relieve Russo of his obligation to exhaust the appeals process. Russo's argument rests essentially on speculation about how a process he did not pursue might have unfolded.

## CONCLUSION

The July 16 motions for summary judgment are granted. The Clerk of Court shall enter judgment for the defendants and close the case.

SO ORDERED:

Dated: New York, New York
January 19, 2011

_____
DENISE COTE
United States District Judge